Loring, J„
dissenting:
This ease was heard seven or eight years since upon the understanding that the assignments or powers of attorney, set forth in the petition, and on which the petitioner makes title, should be immediately filed. This was not done then, and has not been done since; and I think the case is not in a condition to be heard or considered, and that it should be dismissed for the petitioner’s in default in preparing it. But as it is held for judgment I am obliged to dissent from the opinion of the majority of the court.
The record shows that a bill in equity to account was brought by' the United States against Heslep Peck and others, in the District Court of the United States for the northern district of California, and that a decree was made certifying that the United States were indebted to Heslep and Peck in the sum of $10,360. And the petitioner, as assignee of Heslep and Peck, claims that sum, and offers the decree in evidence, and the question is whether it is admissible.
I think it is, and my opinion is founded on the peculiar nature of the suit in which the decree was rendered, viz : a bill in equity to account brought by the United States ; and I think that this case is by that distinguished from any other that has been brought here, or cited in its argument or decision; and that this decree is no more subject to the objection made that the United States, as sovereigns, are not subject to judgment than would be an account stated by one of their officers appointed by them for the purpose, if he had certified the balance found in the same words. An account stated is the mutual action of both parties to it; and that, I think, makes the rule of law and reason for this case. Where parties have established a mutual relation, they have made its burdens and its benefits mutual. And a sovereign is barred by his own acts and concluded by his own admissions wherever he submits himself to litigation as a subject would be, else the litigation would be a mockery.
A bill in equity to account is the modem substitute for the old common law action of “accompt;” and was adopted from it, and follows its incidents. And in that the purpose of the plaintiff was to bring the defendant to account before the court, and thereby to ascertain and declare judicially the balance of account'between them, its amount, and from which of them it was due. This is distinctly shown in the old text-books in pleading. Impey’s Pleader — Account, 145, states: “ The object of this suit was to bring the party to account, and his definition of the action is ‘ a writ or action brought against a *335 man wbo is liable to render an account,’ ” (Pulling on Mercantile Accounts.) And Blaekstone, vol. 3, pp. 162-3, describes the writ of account as “ commanding the defendant to render a just account to the plaintiff, or to show the court good cause to the contrary.” It arose from the feudal relation of lord and bailiff, and was the proper and peculiar remedy of the feudal lord for enforcing that accounting which it was the duty of his bailiff or steward to render. (Co. L., 172 a.)
The action of “ accompt,” therefore, was not, like the action of debt, a mere process for collecting an amount due. And the declaration in the old forms did not allege an indebtedness on the part of the defendant. It alleged his liability to account, and the default charged was a default in not accounting. (3 Wilson, 73.) And, therefore, it was a good plea to the action that the defendant had previously accounted, without regard to the fact that the balance of account had been found against him and was still unpaid. Viner’s Abr. Account (citing Brooke’s Abridgment of the Year Books) says, sec. 10, note : “ It was awarded a good plea, for by account before any auditors or before the plaintiff himself the action is altered into another nature. For he (the plaintiff) may have debt upon the arrearages. And the account is determined forever.”
And to this special purpose of obtaining an account, the proceedings were carefully adapted. For in the action of account there were two judgments. The first quod computet that the defendant should account. This judgment established the defendant’s liability to account, which the declaration averred, and nothing more. And it adjudged the defendant in mercy, “ because he hath not before accounted,” and for no other cause.
The defendant’s liability to account being found, the auditors were appointed by the court, and the order to them was “ to take and declare the said account between the plaintiff and defendant.” (3 Wilson, 89.) And before the auditors the defendant from the earliest times at the common law accounted on his oath. Brooke’s Abr. (citing Y. B. 41, E 3, pp. 3 and 9) states thus : “ He who is awarded to account swears that he will account well and lawfully.”
And on such oath and the other evidence adduced by the parties, the balance of the account between them was ascertained and reported by the auditors as the precise and only issue. And it was the duty of the auditor to declare this balance specifically. If it was found for the defendant, it was to be declared for the defendant in terms and amount. (1 Leonard, 219, Gaedton v. Lord Davies.) And a mere *336 general finding that tbe defendant was not indebted was erroneous. (4 Wash. C. C., 442.) For there was no general issue (1 Ohitty PI. )■ that could authorize such a finding. It did not answer the plaintiff’s suit, nor the purpose of the procedure, rror fulfil the order of the court to the auditors, “ to take and declare the account ” between the parties. This could be done only by specifying the balance due, and to whom due. And the report of the auditors finding and declaring this, when accepted and recorded by the court, was an interlocutory judgment which would support a scire facias brought by the plaintiff, (11.Co. B,., 38,) or an action of debt brought by the defendant, (3 Serg. and R., 7.)
At the common law, when the report of the auditors was accepted and recorded by the court, if the balance was found for the plaintiff, he was entitled to a judgment, “quod recuperet,” that he should recover the amount and costs, and consequently that an execution should issue to enforccpayment. For the proceedings before the court showed that the defendant was in default,first, for not accounting, and then for not paying thb balance due. But if the balance was found due the defendant and so declared accepted and recorded, no judgment forits.recovery was rendered for him, and the only judgment rendered for him was that he should go without day. And the reason was , that in such case the plaintiff in the action of account was not shown to be in default; it was not his duty to keep the accounts, (as between the lord and his bailiffs, for instance,) or to know their result; he had not the means of doing so; and until the accounting was had and the balance of the accounts ascertained and declared, and after that demanded of him, the plaintiff was not in default nor liable to action. The report of auditors, though when accepted and recorded a judgment, was interlocutory only and not a foundation for compulsory process, but it was record evidence of the facts it found between the same parties. And the course of procedure was for the defendant in account to bring an action of debt for the balance of account found and declared to be due him, and to maintain his action of debt by the auditor’s report of the judgment made in the action of account. This was a judgment, and, as such, evidence; and on the authority of Lord Coke it was conclusive evidence, for, speaking of the effect as evidence of t'he report of auditors, appointed under the statute 2 Westminster, and thereby made judges of record, he says: “ If the lord be found in surplusage upon the account determined by the auditors, as an incident to their authority, in an action of debt brought by the bailiff for this surplus-age, the lord shall not wage his law, because by force of the act, they *337 being judges, no wage of law can be allowed against tbe record.” And sncb has been the law from that day to this. In tbe case of McCall v. Cronsillat, 3 Serg. and R., 7, the plaintiff in an action of debt gave in evidence tbe report of auditors in an action o'f account, declaring the balance due him as defendant in account in the court of common pleas, C. J. Tilghman said: “ They (tbe court of common pleas) only confirmed the report of the auditors, but gave no judgment that McCall should recover any sum of money of Cronsillat; in.this respect the proceedings appear to have been regular. I have not been able to find in the books of entries any record of an action of account rendered in which it was found that the defendant was in surplusage, nor have I seen any authority for entering judgment that the defendant should in such case recover against the plaintiff. But the law seems to be well settled that the defendant may support an action of debt against the plaintiff for the amount of the sum in which he was found in surplusage by the auditor;” and judgment was rendered for the plaintiff in debt on the record he adduced.
These authorities referring their doctrine to the Year Books, determine that the auditors, in an action of account at the common law, must declare the balance due the defendant if they find it; that their report, accepted and recorded by the court, is an interlocutory judgment, and, as such, is evidence of a debt due from the plaintiff in account, to the defendant, and admissible in evidence in an action of debt brought by the latter against the former. And that it is conclusive evidence ; and the reason for this is that the matter in litigation in such action of debt is the. same matter that was judicially determined between the same parties in the action of account; so that the caséis within the maxim of public policy “ expedit reipubliecB ut sit finis litium.”
Now, if the proceeding in California had been an action of account at common law, and we had before us, instead of this decree a report of auditors accepted by the court, could it have been objected to it, that •the United States were not subject to judgment or process against them, when the record would have showed on its face that the United States had been plaintiffs in the action of account and that the final judgment of the court for the defendant was that he should go without day and nothing more; and that that only had been done which the United States had required to be done, viz: the balance of the account judicially ascertained and declared, and made an interlocutory judgment between the parties, which was not a ground for process, but by the rules of law belonging to such interlocutory judgments was evidence ? And would the case have been within the reason of the *338 objection? The reason why an entry of a verdict on a set-off ora judgment against the United States for debt or costs in a court of common law or equity is a nullity, is, that it is beyond the power of the tribunal, and therefore irregular and illegal and without any efficiency whatever. It is not a verdict, or a judgment, nor a record between the parties. But in the case supposed this would not have been so, for the entry of the balance for the defendant would have been, neither irregular nor illegal, nor beyond the power of the tribunal. On the contrary, it would have been in the due course of legal procedure in the action of account and the legal result of the plaintiff’s suit and the fulfilment of its purpose and prayer and obligatory on the court; and therefore it would have been efficient according to its nature, and that is as an interlocutory judgment between the plaintiffs and defendants in the suit in which it was rendered; and a judgment, legal and valid where it is rendered, must, I think, have the effect of such a judgment everywhere, and be competent either as a bar or as evidence between the same parties anywhere.
Now, thee petitioner here is suing in an action of debt for the balance of account found and adjudged for the defendants in an action of account brought by the United States, and the only difference between the case supposed and that under consideration, is that in the latter the proceeding in account was by bill in equity instead of by an action at common law. But a bill in equity to account, as has been said, was adopted from the action of account, and had the same purpose and the like procedure. It alleges against a defendant a liability to account, and charges him with a default in not accounting, and it prays that the account may be stated and its balance ascertained and declared. In equity as at law there are two judgments; the former quod computet, and this fixes the defendant’s liability to account; then, the order to the master, who holds the place of the auditors at common law, is “to take a mutual account of the dealings and transactions between the plaintiff and defendant,” and the master ascertains the balance, and reports it specifically as to the amount due and to whom due; and this report being made to the court and accepted by it, it signifies that by a decree, which becomes thus an interlocutory judgment between the parties.
And that is the decree before us now, and as the balance was found for the defendant in account, the court made no decree that the defendant should recover the amount, but only such record as is made in the like circumstances in an action of account at common law. It accepted and affirmed the master’s report and it did no more. Its words are as *339 follows: “ It is therefore ordered, adjudged, and decreed to be certified that the sum of $10,360 is due and payable to the said defendants, Heslep and Peck, with six per cent, interest from and after the first day of May, 1851.
This decree is according to the practice in equity where the balance of account is found for the defendant. It is an interlocutory judgment, in no way transcending a report of auditors at common law, but only equivalent to it, for, like that, it contains no order on the United States to pay the balance found. It only shows that the account has been stated and its balance ascertained, declared, and recorded fora judgment between the parties, according to the prayer of the plaintiffs’ bill and on their requirement.
And if the United States should anywhere sue Heslep and Peck for the cause of action set forth in the title of account in which this decree was rendered, the decree would be a complete bar to the suit as a judgment between the same parties for the same cause of action. And I think that if it is a judgment for one purpose it is for all purposes, and that if it has vitality enough for a bar, it has vitality enough to be evidence.
Nor can it be objected to this decree that the court might, as in modern practice in equity between individuals, have made it a ground for an order for payment and compulsory process against the United States. It might as well be argued that a general verdict for the defendant could not be rendered in a suit in which the United States are plaintiffs, because in such case, between individuals, such a verdict would subject the plaintiff to judgment and execution for costs. Costs are within the discretion of the court. And so the orders and decrees of a court in equity are in substance and form within its control, to be modified and fashioned as they may see fit. Besides, its compulsory process, is not like an execution at common law, the legal consequence of a judgment for a debt, for in theory it is a process for contempt,, pertaining to the court for the vindication of its authority and used or forborne at its discretion. And no argument can be founded on the assumption that a court of law or equity will abuse- its processes.
And I think this case has no similarity to the case of Tillou v. The United States, or any other case arising on set-offs under the act of March 3, 1797, 1 U. S. L., 512. The purpose and effect of that statute is to correct the mistakes of the accounting officers and to place the defendant in court as he would have stood if he had been correctly dealt with at the treasury. The credit it permits the defendant to claim and prove are proper set-offs against the particular debt *340 claimed of him, but this in no way assimilates the proceeding under statute to an action of account. For in cases under the statute the only issue tendered by the United States is their right to the particular debt they claim; they submit that right and nothing else to j udgment; and neither their courts nor the courts of States can alter or transcend the issue tendered, or derogate from that sovereignty that -may be plaintiff hut cannot be made defendant, or subjected to suit or process except at its own pleasure.
But in the bill in equity to account, in which this decree was made, the very issue tendered by the United States was the balance of accounts between them and Heslep and Peck, and this the United States themselves required should be ascertained and declared in the due form of legal procedure in the action of account in equity. And the decree offered in evidence only shows that exactly that has been 'done which the United States required should be done. In all this the United States are plaintiffs, and plaintiffs only, and keep their state 'as sovereign, exempt from suit and process except here, where under their own statutes they respond according to the rules of law and evidence.
To all objection to the admissibility of this decree, founded on the sovereignty of the United States, and its consequent exemption from suit and process, I think it answer enough to say that the decree offered in evidence only shows that the United States were plaintiffs in a bill of account, and required the account between them and Heslep. and Peck to be stated, and its balance judicially ascertained and declared and recorded for a judgment, and that this and no more was done. And as that balance of accounts is the claim of the petitioner here,.I think the record of its previous adjudication is admissible here and conclusive against the United States. This only applies to the United States the rule that a matter once judicially determined between litigants shall not again be brought into litigation between them. The rule itself requires no authority and has the highest. The Supreme Court said in the case of The United States v. Nourse, 9 Peters, 8, in their opinion delivered by Chief Justice Marshall, “ it is a rule, to which no exception is recollected, that the judgment of a court of competent jurisdiction concludes the subject-matter between the same parties. They cannot again bring it into litigation.”
The claim for interest in this case makes a part of the decree and is as much proved by the decree as the principal sum of the debt. Upon what facts either was found by the court in California cannot, by the rule controlling judicial tribunals, be inquired into here. The *341 decree of its own force, if of any force, precludes this. In the words of the Supreme Court, 1 Howard, 149, United States Bank v. Beverly:. “ Whatever, therefore, our opinion might now be as to the facts adjudicated in the former case, the judicial power is not competent to revise the evidence on which the decree was rendered on any ground now set up in the answer of the defendant or apparent on the present record, and they must be taken to be beyond all controversy in this or any future case between the same parties.”
It was objected by the Solicitor that the case shown on the record was not a subject for a bill to account, because it showed there were no mutual accounts, and no privity between the parties, and therefore the court in California could not rightfully entertain the suit.
But the bill avers that a mill and its machinery and implements, at a date specified, belonged to the United States, and afterward came to the possession of the defendants under contracts for their use and to account for receipts from, and expenditures in their use, and for storage contracts. This clearly would make the privity and the liability to account which is required for a bill to account, and would give the court in California jurisdiction of the case. And we cannot try the merits of the case over again, nor entertain objections which might have been made to the original bill. And the only questions here are the admissibility and effect of the decree.
It was also objected that the petitioner sues as assignee. For the reasons stated by me in Sines’s case and Cote’s case, I think this not a valid objection; and that the act of 1853, passed before this court existed, had no reference to its jurisdiction, which is to be sought in-the acts of Congress constituting this court, which expressly provide for litigation and judgments on alleged claims here.